2016 IL App (1st) 121732-B
No. 1-12-1732
June 28, 2016

SECOND DIVISION

---

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

---

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, ) | | Appeal from the Circuit Court |
| ) | | of Cook County. |
| Respondent-Appellee, ) | | |
| ) | | |
| v. ) | | No. 85 C 2190 |
| ) | | |
| TERRY SANDERS, ) | | |
| ) | | The Honorable |
| Petitioner-Appellant. ) | | Timothy Joseph Joyce, |
| ) | | Judge presiding. |

---

JUSTICE NEVILLE delivered the judgment of the court, with opinion.
Justice Simon and Justice Hyman concurred in the judgment and opinion.

**OPINION**

¶ 1        A jury found Terry Sanders guilty of murder and two attempted murders committed in 1985, when Sanders was 17. The trial court sentenced Sanders to serve consecutively terms of 40 years for the murder and 30 years for each of the two attempted murders, for a total of 100 years. After the dismissal of his postconviction petition and a successive postconviction

petition, Sanders filed a second successive postconviction petition, arguing that the sentencing statute did not permit the consecutive sentencing the court imposed and that recent cases concerning cruel and unusual punishment for minors established that the trial court based the sentencing on improper considerations. The circuit court summarily dismissed the second successive postconviction petition.

¶ 2        In this appeal from the dismissal of the second successive postconviction petition, we find that recent authority concerning the imposition of lengthy sentences on minors calls into question the sentencing here. We reverse the dismissal of the second successive postconviction petition and remand for further proceedings in accord with this opinion.

¶ 3                                          BACKGROUND

¶ 4        In 1985, William Feuling managed a convenience store where Sanders worked as an assistant manager. On January 20, 1985, Arthur Kozak and Brian Walkowiak visited Feuling at his home. Sanders also came over with Andrew Johnson and Mike Hill. That evening, Johnson and Hill drew guns and ordered Sanders to tie up Feuling, Kozak and Walkowiak. Johnson and Hill robbed Feuling, Kozak and Walkowiak. Johnson stabbed Feuling repeatedly, then handed the knife to Sanders and ordered him to kill Kozak. Sanders drew the knife across Kozak's stomach, head and neck, making superficial cuts. Sanders then hit Kozak's head with a hammer, and the hammer's head broke off. Walkowiak got free from the bindings and ran. Sanders hit Walkowiak's head with a poker, but Walkowiak got out and onto the street. A bullet ripped into Walkowiak's back. Walkowiak kept running until he found a car whose driver agreed to take him to the nearest hospital.

¶ 5         Sanders separated himself from Johnson and Hill as they ran from Feuling's home. Sanders found a police officer and told the officer that someone had been stabbed. Sanders gave the officer Feuling's address. Police found Feuling dead at the scene from multiple stab wounds. Police cut the cord binding Kozak. Kozak told police about the robbery and murder.

¶ 6         Pictures taken at the police station showed Kozak's cuts. The hammer blow to his head left no bruise marks. Doctors did not prescribe any medication for Kozak.

¶ 7         Police never caught Hill. Prosecutors charged Johnson and Sanders with armed robbery, murder, and the attempted murders of Kozak and Walkowiak. At the joint trial with Johnson before separate juries, Kozak testified that the hammer blow to his head made him dizzy for a second, but he never lost consciousness. He claimed no more serious injury from the attack. A jury found Sanders guilty of the murder and both attempted murders.

¶ 8         At the sentencing hearing, the judge emphasized prior findings that Sanders acted delinquently. When Sanders was 13, he cut a girl with a razor, and, at age 16, he robbed someone. Teachers and other persons in the community thought highly of Sanders, and the judge treated their testimony as further reason to regard Sanders as treacherous. The judge said:

> "I have to make sure on behalf of the Feuling family, on behalf of all of
> society, that you are incarcerated for a sufficiently long period of time so that
> society will be protected against some violent act like this again.
>
> That society will not have to worry that Terry Sanders, the fellow that
> sits here meekly in front of me and speaks softly and has gotten so many
> people to like him and to help him out and speak up for him, that you will not

turn again on those same people and on your friends and commit another horrible crime that nobody can figure out and nobody can understand why it happened.

I have got to make sure that this does not happen for a considerable period of time.

Insofar as your co-defendant, Mr. Johnson, was concerned, I found, and I find again, that the murder of William Feuling was an act separate and apart from because it ended prior to the time when you attempted to kill Art Kozak and the attempt murder of Brian Walkowiak and also was an event that was separate and apart from the murder of William Feuling and separate and apart from the attempted murder of Arthur Kozak. ***

All of these events are separate and distinct and you should be punished individually for each because each of them are separate victims.

I could sentence you to natural life *** but because of your young age and because of your ability to get people to say that you have a potential for rehabilitation *** I am not going to do that. But I am going to sentence you to a sufficient period of time that society, when you get out, will not have to worry about whether or not you're going to be able to commit crimes such as this again."

¶ 9    The appellate court affirmed the convictions and sentences, including the consecutive sentencing. *People v. Sanders*, 168 Ill. App. 3d 295 (1988). Sanders filed a postconviction petition, and the circuit court dismissed the petition without holding an evidentiary hearing.

The appellate court affirmed the judgment. *People v. Sanders*, No. 1-92-0644 (1993) (unpublished order under Supreme Court Rule 23).

¶ 10    In July 2001, Sanders filed a successive postconviction petition, arguing that the trial court lacked authority to make the sentence for the attempted murder of Kozak run consecutively to the sentence for the murder of Feuling. See Ill. Rev. Stat. 1985, ch. 38, ¶ 1005-8-4(a), (b). He also argued that his trial and appellate counsel provided ineffective assistance when they failed to raise the sentencing issue properly in the trial court and on the direct appeal. The circuit court dismissed the successive petition, finding that *res judicata* barred his claims that the court imposed a void sentence and that he received ineffective assistance of counsel. This court affirmed the trial court's decision. *People v. Sanders*, No. 1-01-4121 (2002) (unpublished order under Supreme Court Rule 23).

¶ 11    In 2004, Sanders filed a *habeas corpus* petition. The circuit court recharacterized the petition as a second successive postconviction petition and summarily dismissed it. The appellate court reversed the decision because the circuit court did not give Sanders the opportunity to withdraw or amend his petition when it recharacterized the petition as a postconviction petition. See *People v. Pearson*, 216 Ill. 2d 58 (2005). On remand, in 2011, Sanders amended the petition and moved for leave to file it as a second successive postconviction petition. He again argued that the trial court lacked authority to impose the consecutive sentences. He also argued that the trial court had not properly considered Sanders's youth in sentencing. Sanders argued that he had cause for failing to raise the issue earlier, because a new decision from the United States Supreme Court, *Graham v. Florida*, 560 U.S. 48 (2010), changed the law applicable to lengthy sentences for juveniles. In an

order dated May 4, 2012, the circuit court denied Sanders's motion for leave to file the second successive postconviction petition.

¶ 12    Sanders appealed. This court found the sentence partially void and that new case law concerning the sentencing of juveniles warranted advancing his petition to the second stage of postconviction proceedings. *People v. Sanders*, 2014 IL App (1st) 121732-U. Our supreme court subsequently decided *People v. Castleberry*, 2015 IL 116916, in which the court overruled cases on which this court relied in finding Sanders's sentence partially void. The supreme court entered a supervisory order directing this court to reconsider the case in light of *Castleberry*. We now vacate our prior order and enter this order.

¶ 13                                    ANALYSIS

¶ 14    We review *de novo* the order denying Sanders leave to file the successive postconviction petition. *People v. Gillespie*, 407 Ill. App. 3d 113, 124 (2010).

¶ 15                    Cruel and Unusual Punishment of Juveniles

¶ 16    Sanders asked this court to reverse the order denying his motion for leave to file a second successive postconviction petition, based on the trial court's failure to take into account all of the considerations relevant to sentencing juveniles. This court reversed the trial court's judgment and remanded for further proceedings on the second successive postconviction petition on the grounds that the imposition of a *de facto* life sentence, without consideration of the special circumstances of youth, violated Sanders's rights under the eighth amendment.

¶ 17    Nothing in *Castleberry* affects our resolution of this aspect of Sanders' appeal. The State contends that a different decision, *People v. Thompson*, 2015 IL 118151, ¶ 43, shows that we misunderstood the applicability of the eighth amendment to lengthy sentences imposed on

juveniles. In *Thompson*, our supreme court held that new case law regarding the sentencing of juveniles did not affect the sentence imposed on Thompson, because Thompson was 19 years old when he committed the offense for which the trial court had sentenced him. We do not see how the holding of *Thompson* affects the analysis here, as Sanders was a juvenile at the time of the offenses at issue in this case. We restate our discussion of the eighth amendment issue.

¶ 18        The Post-Conviction Hearing Act restricts the use of successive postconviction petitions. 725 ILCS 5/122-1(f) (West 2010). For the court to permit a defendant to file a successive postconviction petition, the petitioner must either meet the cause and prejudice test (725 ILCS 5/122-1(f) (West 2010)), or he must sufficiently allege new evidence of actual innocence. *People v. Ortiz*, 235 Ill. 2d 319, 330 (2009). For the cause and prejudice test, the petitioner must show that an objective impediment precluded him from raising the issue in an earlier proceeding and that the claimed errors resulted in actual prejudice. *People v. McDonald*, 405 Ill. App. 3d 131, 135 (2010).

¶ 19        Sanders claims that United States Supreme Court decisions show that he had cause for failing to raise the issue in prior proceedings and that he suffered prejudice from the trial court's error. After Sanders filed his earlier postconviction petitions, the Supreme Court decided *Graham v. Florida*, 560 U.S. 48, and *Miller v. Alabama*, 567 U.S. ___, 132 S. Ct. 2455 (2012). Those two cases substantially changed the law concerning the imposition of lengthy sentences on children. See *People v. Davis*, 2014 IL 115595, ¶ 41. The *Davis* court held that *Miller* and *Graham* changed the law and gave postconviction petitioners cause for

failing to raise the issue in proceedings that preceded those decisions. *Davis*, 2014 IL 115595, ¶ 42.

¶ 20 To show prejudice, Sanders must show a reasonable probability that he would have achieved a better result if the trial court had correctly applied the eighth amendment, as interpreted in the decisions in *Graham* and *Miller*. See *People v. Pitsonbarger*, 205 Ill. 2d 444, 471 (2002); *People v. Mitchell*, 189 Ill. 2d 312, 333-34 (2000). In *Miller*, the United States Supreme Court explained at length the special concerns that arise whenever a court sentences a juvenile offender. First, the *Miller* Court interpreted the holdings of *Graham* and *Roper v. Simmons*, 543 U.S. 551 (2005):

"*Roper* and *Graham* establish that children are constitutionally different from adults for purposes of sentencing. Because juveniles have diminished culpability and greater prospects for reform, we explained, 'they are less deserving of the most severe punishments.' *Graham*, 560 U.S., at ___, 130 S.Ct., at 2026. Those cases relied on three significant gaps between juveniles and adults. First, children have a ' "lack of maturity and an underdeveloped sense of responsibility," ' leading to recklessness, impulsivity, and heedless risk-taking. *Roper*, 543 U.S., at 569, 125 S.Ct. 1183. Second, children 'are more vulnerable ... to negative influences and outside pressures,' including from their family and peers; they have limited 'contro[l] over their own environment' and lack the ability to extricate themselves from horrific, crime-producing settings. *Ibid.* And third, a child's character is not as 'well formed'

as an adult's; his traits are 'less fixed' and his actions less likely to be 'evidence of irretrievabl[e] deprav[ity].' *Id.*, at 570, 125 S.Ct. 1183.

Our decisions rested not only on common sense—on what 'any parent knows' but on science and social science as well. *Id.*, at 569, 125 S.Ct. 1183. In *Roper*, we cited studies showing that ' "[o]nly a relatively small proportion of adolescents" ' who engage in illegal activity ' "develop entrenched patterns of problem behavior." ' *Id.*, at 570, 125 S.Ct. 1183 (quoting Steinberg & Scott, Less Guilty by Reason of Adolescence: Developmental Immaturity, Diminished Responsibility, and the Juvenile Death Penalty, 58 Am. Psychologist 1009, 1014 (2003)). And in *Graham*, we noted that 'developments in psychology and brain science continue to show fundamental differences between juvenile and adult minds'—for example, in 'parts of the brain involved in behavior control.' 560 U.S., at ___, 130 S.Ct., at 2026. We reasoned that those findings—of transient rashness, proclivity for risk, and inability to assess consequences—both lessened a child's 'moral culpability' and enhanced the prospect that, as the years go by and neurological development occurs, his ' "deficiencies will be reformed." ' *Id.*, at ___, 130 S.Ct., at 2027 (quoting *Roper*, 543 U.S., at 570, 125 S.Ct. 1183).

*Roper* and *Graham* emphasized that the distinctive attributes of youth diminish the penological justifications for imposing the harshest sentences on juvenile offenders, even when they commit terrible crimes. Because ' "[t]he heart of the retribution rationale" ' relates to an offender's blameworthiness,

' "the case for retribution is not as strong with a minor as with an adult." ' *Graham*, 560 U.S., at ___, 130 S.Ct., at 2028 (quoting *Tison v. Arizona*, 481 U.S. 137, 149, 107 S.Ct. 1676, 95 L.Ed. 2d127 (1987); *Roper*, 543 U.S., at 571, 125 S.Ct. 1183). Nor can deterrence do the work in this context, because ' "the same characteristics that render juveniles less culpable than adults" '— their immaturity, recklessness, and impetuosity—make them less likely to consider potential punishment. *Graham*, 560 U.S., at ___, 130 S.Ct. at 2028 (quoting *Roper*, 543 U.S., at 571, 125 S Ct. 1183). Similarly, incapacitation could not support the life-without-parole sentence in *Graham* : Deciding that a 'juvenile offender forever will be a danger to society' would require 'mak[ing] a judgment that [he] is incorrigible'—but ' "incorrigibility is inconsistent with youth." ' 560 U.S., at ___, 130 S.Ct., at 2029 (quoting *Workman v. Commonwealth*, 429 S.W.2d 374, 378 (Ky.App.1968)). And for the same reason, rehabilitation could not justify that sentence. Life without parole 'forswears altogether the rehabilitative ideal.' *Graham*, 560 U.S., at ___, 130 S.Ct., at 2030. It reflects 'an irrevocable judgment about [an offender's] value and place in society,' at odds with a child's capacity for change. *Ibid.*" *Miller*, 567 U.S. at ___, 132 S. Ct. at 2464-65.

¶ 21    The *Miller* court then applied its observations to the case on appeal:

"Of special pertinence here, we insisted in these rulings that a sentencer have the ability to consider the 'mitigating qualities of youth.' *Johnson v. Texas*, 509 U.S. 350, 367, 113 S.Ct. 2658, 125 L.Ed.2d 290 (1993). Everything

we said in *Roper* and *Graham* about that stage of life also appears in these decisions. As we observed, 'youth is more than a chronological fact.' *Eddings*, 455 U.S., at 115, 102 S.Ct. 869. It is a time of immaturity, irresponsibility, 'impetuousness[,] and recklessness.' *Johnson*, 509 U.S., at 368, 113 S.Ct. 2658. It is a moment and 'condition of life when a person may be most susceptible to influence and to psychological damage.' *Eddings*, 455 U.S., at 115, 102 S.Ct. 869. And its 'signature qualities' are all 'transient.' *Johnson*, 509 U.S., at 368, 113 S.Ct. 2658. *Eddings* is especially on point. There, a 16-year-old shot a police officer point-blank and killed him. We invalidated his death sentence because the judge did not consider evidence of his neglectful and violent family background (including his mother's drug abuse and his father's physical abuse) and his emotional disturbance. We found that evidence 'particularly relevant'—more so than it would have been in the case of an adult offender. 455 U.S., at 115, 102 S.Ct. 869. We held: '[J]ust as the chronological age of a minor is itself a relevant mitigating factor of great weight, so must the background and mental and emotional development of a youthful defendant be duly considered' in assessing his culpability. *Id.*, at 116, 102 S.Ct. 869."

*Miller*, 567 U.S. at ___, 132 S. Ct. at 2467.

¶ 22     The Supreme Court of Iowa addressed the effect of *Miller* on sentences other than life in prison for juvenile offenders. In *State v. Null*, 836 N.W.2d 41 (Iowa 2013), the trial court sentenced the juvenile offender to an aggregate term of 52.5 years in prison for second degree murder and first degree robbery. The court held:

"[W]hile a minimum of 52.5 years imprisonment is not technically a life-without-parole sentence, such a lengthy sentence imposed on a juvenile is sufficient to trigger *Miller*-type protections. ***

*** In coming to this conclusion, we note the repeated emphasis of the Supreme Court in *Roper*, *Graham*, and *Miller* of the lessened culpability of juvenile offenders, how difficult it is to determine which juvenile offender is one of the very few that is irredeemable, and the importance of a 'meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation.' *Graham*, 560 U.S. at ___, 130 S.Ct. at 2030, 176 L.Ed.2d at 845-46. ***

* * *

*** [W]e conclude [the Iowa constitution] requires that a district court recognize and apply the core teachings of *Roper*, *Graham*, and *Miller* in making sentencing decisions for long prison terms involving juveniles. [Citations.]

First, the district court must recognize that because 'children are constitutionally different from adults,' they ordinarily cannot be held to the same standard of culpability as adults in criminal sentencing. *Miller*, 567 U.S. at ___, 132 S.Ct. at 2464, 183 L.Ed.2d at 418; [citation]. The constitutional difference arises from a juvenile's lack of maturity, underdeveloped sense of responsibility, vulnerability to peer pressure, and the less fixed nature of the juvenile's character. [Citations.]

If a district court believes a case presents an exception to this generally applicable rule, the district court should make findings discussing why the general rule does not apply. [Citations.] In making such findings, the district court must go beyond a mere recitation of the nature of the crime, which the Supreme Court has cautioned cannot overwhelm the analysis in the context of juvenile sentencing. [Citations.] Further, the typical characteristics of youth, which include immaturity, impetuosity, and poor risk assessment, are to be regarded as mitigating, not aggravating factors. [Citation.]

Second, the district court must recognize that '[j]uveniles are more capable of change than are adults' and that as a result, 'their actions are less likely to be evidence of "irretrievably depraved character." ' *Graham*, 560 U.S. at ___, 130 S.Ct. at 2026, 176 L.Ed.2d at 841 (quoting *Roper*, 543 U.S. at 570, 125 S.Ct. at 1195, 161 L.Ed.2d at 22); [citation]. While some juvenile offenders may be irreparably lost, it is very difficult to identify juvenile offenders that fall into this category. As the Supreme Court noted, even expert psychologists have difficulty making this type of prediction. [Citations.] Further, the district court must recognize that most juveniles who engage in criminal activity are not destined to become lifelong criminals. [Citations.] The ' "signature qualities" of youth are all "transient." ' *Miller*, 567 U.S. at ___, 132 S.Ct. at 2467, 183 L. Ed. 2d at 422 (quoting *Johnson*, 509 U.S. at 368, 113 S.Ct. at 2669, 125 L.Ed.2d at 306). Because 'incorrigibility is inconsistent with youth,' care should be taken to avoid 'an irrevocable judgment about [an

offender's] value and place in society.' *Miller*, 567 U.S. at ___, 132 S.Ct. at 2465, 183 L.Ed.2d at 419 (citation and internal quotation marks omitted).

Finally, and related to the previous discussion, the district court should recognize that a lengthy prison sentence without the possibility of parole such as that involved in this case is appropriate, if at all, only in rare or uncommon cases. [Citations.]

At the same time, it bears emphasis that while youth is a mitigating factor in sentencing, it is not an excuse. [Citations.] Nothing that the Supreme Court has said in these cases suggests trial courts are not to consider protecting public safety in appropriate cases through imposition of significant prison terms. Further, it bears emphasis that nothing in *Roper*, *Graham*, or *Miller* guarantees that youthful offenders will obtain eventual release. All that is required is a 'meaningful opportunity' to demonstrate rehabilitation and fitness to return to society. *Graham*, 560 U.S. at ___, 130 S.Ct. at 2030, 176 L.Ed.2d at 845-46." *Null*, 836 N.W.2d at 71-75.

¶ 23    The court vacated the sentence and remanded for the trial court to reconsider the sentence in light of *Miller*. As the *Null* court pointed out, courts in other jurisdictions similarly remanded cases for resentencing in light of *Miller*. See *People v. Araujo*, No. B240501, 2013 WL 840995, at *5 (Cal. Ct. App. Mar. 7, 2013) (unpublished opinion) (sentencing court's reference to the defendant's "tender age" does not eliminate need to remand for resentencing in light of *Miller*); *People v. Rosales*, No. F061036, 2012 WL 4749427, at *24 (Cal. Ct. App. Oct. 5, 2012) (unpublished opinion) ("*Miller* changed the law on what factors are applicable

by elaborating extensively on the ways in which a defendant's youth is relevant ***."); *State v. Fletcher*, 47-777KA (La. App. 2 Cir. 4/10/13), 112 So. 3d 1031; *Daugherty v. State*, 96 So. 3d 1076, 1079-80 (Fla. Dist. Ct. App. 2012). Some recent Illinois cases also apply *Miller* to sentences other than life in prison imposed on juveniles. See *People v. Dupree*, 2014 IL App (1st) 111872, ¶ 58; *People v. Nieto*, 2016 IL App (1st) 121604, ¶ 42. We find *Null* and the other cited authorities persuasive.

¶ 24     The State contends that the application of *Miller* here conflicts with *People v. Davis*, 2014 IL 115595, ¶ 43, and *People v. Patterson*, 2014 IL 115102, ¶ 100. The *Davis* court noted that even after *Graham*, *Roper* and *Miller*, a trial court still has authority to impose a sentence of natural life in prison on a juvenile in an appropriate case. *Davis*, 2014 IL 115595, ¶ 43. We see no conflict between that holding and our application of the principles stated in *Graham*, *Roper* and *Miller* to this case.

¶ 25     In *Patterson*, our supreme court said that *Graham*, *Roper* and *Miller* did not apply to the sentence of almost 31 years imposed on the juvenile defendant in that case, because the sentence, "[a]lthough lengthy, *** is not comparable to *** life in prison without parole." *Patterson*, 2014 IL 115102, ¶ 108. The trial court here imposed on Sanders consecutive sentences totaling 100 years, and, according to the State, even with maximum good time credit, Sanders would need to serve at least 49 years before he could become eligible for parole.

¶ 26     "The United States Sentencing Commission Preliminary Quarterly Data Report" (through June 30, 2012) indicates that a person held in a general prison population has a life

expectancy of about 64 years. This estimate probably overstates the average life expectancy for minors committed to prison for lengthy terms. One researcher concluded:

"A person suffers a two-year decline in life expectancy for every year locked away in prison. Evelyn J. Patterson, *The Dose-Response of Time Served in Prison on Mortality: New York State*, 1989-2003, 103 Am. J. of Pub. Health 523, 526 (2013). The high levels of violence and communicable diseases, poor diets, and shoddy health care all contribute to a significant reduction in life expectancy behind bars. See *United States v. Taveras*, 436 F. Supp. 2d 493, 500 (E.D.N.Y. 2006) (finding 'persistent problems in United States penitentiaries of prisoner rape, gang violence, the use of excessive force by officers, [and] contagious diseases' that lead to a lower life expectancy in prisons in the United States), aff'd in part, vacated in part sub nom. *United States v. Pepin*, 514 F.3d 193 (2d Cir. 2008); John J. Gibbons & Nicholas de B. Katzenbach, *Confronting Confinement* 11 (2006). Entering prison at a young age is particularly dangerous. Youth incarcerated in adult prisons are five times more likely to be victims of sexual or physical assault than are adults. [Citation]; Deborah LaBelle, Michigan Life Expectancy Data for Youth Serving Natural Life Sentences, http:// fairsentencingofyouth.org/wp-content/uploads/2010/02/Michigan-Life-Expectancy-Data-Youth-Serving-Life.pdf (last visited Dec. 12, 2013)." Nick Straley, *Miller's Promise: Re-Evaluating Extreme Criminal Sentences for Children*, 89 Wash. L. Rev. 963, 986 n.142 (2014).

¶ 27　　　　To become eligible for parole, Sanders will need to outlive his life expectancy. The sentence the trial court imposed effectively imprisons Sanders for the remainder of the lifetime he can expect to live. See also *United States v. Nelson*, 491 F.3d 344, 349-50 (7th Cir. 2007) (acknowledging the decreased life expectancy for incarcerated individuals based on United States Sentencing Commission data). Even after *Patterson*, Sanders's extreme sentence, in excess of his life expectancy as a prison inmate, implicates the eighth amendment concerns set forth in *Graham*, *Roper* and *Miller*.

¶ 28　　　　The trial court here did not consider the special circumstances of youth that often make lengthy sentences particularly inappropriate for youthful offenders. The court treated Sanders's evidence of rehabilitative potential as grounds for extending his sentence due to his treacherous nature. We find that Sanders has shown a reasonable probability that he would have received a shorter sentence if the trial court correctly understood the eighth amendment as it applies to the punishment of juvenile offenders. Sanders has sufficiently demonstrated cause for the failure to raise the violation in earlier proceedings and prejudice due to the failure, and therefore the circuit court should have granted his request for leave to file his second successive postconviction petition. See 725 ILCS 5/122-1(f) (West 2004); *People v. Smith*, 2014 IL 115946, ¶¶ 34-35. We reverse the order denying Sanders's motion to file a successive postconviction petition, and we remand for further proceedings in accord with this order.

¶ 29　　　　　　　　　　　　　　Ineffective Assistance of Counsel

¶ 30　　　　Sanders admits that, under *Castleberry*, his sentence is only partially voidable, not partially void, and therefore this court cannot vacate the sentence as void. Sanders asks this

court to find that his trial and appellate counsel provided ineffective assistance when they failed to challenge the sentence as unauthorized by the sentencing statute.

¶ 31 Sanders raised the issue of ineffective assistance for failing to challenge the sentence properly in his successive postconviction petition, filed in 2001. The circuit court dismissed that petition, finding the ineffective assistance claim barred as *res judicata*. This court then affirmed the dismissal of the petition. *Sanders*, No. 1-01-4121.

¶ 32 Sanders argues that *res judicata* does not now bar the issue of ineffective assistance of counsel, because no prior court decided the issue on the merits. However, in dismissing the 2001 petition, the circuit court entered a final judgment specifically deciding the issue of whether *res judicata* barred the claim for ineffective assistance of counsel. We find that the final judgment in *Sanders*, No. 1-01-4121, bars relitigation of the issue of whether *res judicata* bars the claim raised again in the 2004 petition for ineffective assistance of counsel. See *People v. Blair*, 215 Ill. 2d 427, 443 (2005).

¶ 33 Finally, Sanders argues that we should apply the fundamental fairness exception to *res judicata* and permit the claim for ineffective assistance of counsel to proceed. See *Blair*, 215 Ill. 2d at 450. However, because of our resolution of the issue of whether Sanders stated a claim for violation of his rights under the eighth amendment, we find that we lack adequate grounds for allowing relitigation of an issue the parties fully litigated in the proceedings on the 2001 petition.

¶ 34 CONCLUSION

¶ 35 The decision in *Sanders*, No. 1-01-4121, bars Sanders from relitigating the issue of whether *res judicata* bars the issue of whether Sanders received ineffective assistance of trial

and appellate counsel when trial and appellate counsel failed to raise properly the issue of whether sentencing statutes permitted the court to impose consecutive sentences for the murder of Feuling and the attempted murder of Kozak. But Sanders has shown that recent United States Supreme Court decisions have changed sentencing of juveniles in ways that could affect the constitutionality of his sentencing, sufficiently showing both cause for his failure to raise the issue in earlier proceedings, and prejudice due to that failure. We reverse the order denying Sanders leave to file his second successive postconviction petition and we remand for further proceedings on Sanders's petition.

¶ 36          Reversed and remanded.