NOTICE
This Order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2025 IL App (4th) 240436-U

NO. 4-24-0436

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
February 6, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | McLean County |
| RYAN S. GODSIL, | ) | No. 21CF1331 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | J. Jason Chambers, |
| | ) | Judge Presiding. |

JUSTICE LANNERD delivered the judgment of the court.
Justices Steigmann and Vancil concurred in the judgment.

**ORDER**

¶ 1     *Held*: The trial court did not abuse its discretion in sentencing defendant to 45 years in prison for predatory criminal sexual assault of a child.

¶ 2     Defendant, Ryan S. Godsil, entered an open guilty plea to one count of predatory criminal sexual assault of a child (720 ILCS 5/11-1.40(a)(1) (West 2020)). The trial court sentenced defendant to 45 years in the Illinois Department of Corrections (DOC).

¶ 3     On appeal, defendant argues his sentence is excessive and disproportionate to the seriousness of the offense due to the trial court failing to give proper weight to mitigating factors. We affirm.

¶ 4                          I. BACKGROUND

¶ 5     In July 2022, defendant pleaded guilty to one count of predatory criminal sexual assault of a child (*id.*). The State dismissed three other counts of predatory criminal sexual assault

of a child (*id.*). There was no agreement as to defendant's sentence.

¶ 6        At the plea hearing, the trial court admonished defendant his sentence would be between 6 and 60 years in DOC. The State presented the factual basis for the offense. In December 2021, Bianca Godsil, defendant's then wife, reported that her foster daughter, L.A., disclosed defendant had touched her vagina approximately one month prior. L.A. was 11 years old at the time of the offense. L.A. was interviewed at the McLean County Children's Advocacy Center, where she reported, as to this offense, defendant touched her vagina and squeezed. Defendant was interviewed by Normal police officers, and he eventually admitted to touching L.A.'s vagina once because he had been awake for 36 hours and did not realize L.A. was not his wife. At the time of the incident, defendant was the foster father to four children, including L.A. The court accepted defendant's guilty plea.

¶ 7        The trial court held defendant's sentencing hearing in October 2023. A presentence investigation report (PSI) was entered without correction or objection.

¶ 8        In aggravation, the State presented a victim impact statement from Bianca, which the State read in court, and a report from the Pediatric Resource Center. Bianca's letter detailed the effects defendant's offense had on L.A. and the family. The report from the Pediatric Resource Center stated L.A.'s anogenital exam was normal, though this did not exclude the possibility of sexual abuse, and she was negative for sexually transmitted infections. The report also noted L.A. was at "an increased risk for negative short- and long-term physical and mental health consequences." The report explained research had shown childhood sexual abuse can have "lasting, negative effects on health, well-being, and life opportunities."

¶ 9        In mitigation, defense counsel presented 18 character letters from family and friends. Defense counsel also submitted a psychosexual evaluation. Defendant rated "Level III

(Average Risk)" on the STATIC-99R recidivism risk scale. The report recommended a sex offender specific treatment program and no contact with any individuals under 18 years of age, among other restrictions.

¶ 10        The State recommended a sentence of 60 years. The State acknowledged the PSI showed defendant had a history of mental health issues, but it noted the majority of the issues occurred while the present case was pending. The State highlighted for the trial court the 19-year age difference between defendant and the victim. After discussing the potential long-term harm to L.A., the State addressed defendant's role as her foster father:

> "[A]n aggravating factor for the court to consider is that the defendant held a position of trust or supervision. He was a foster parent to [L.A.], a family member, defined by statute, an individual that she essentially was told that she can trust. She was a ward of the court and the defendant was an individual that the court entrusted with her.
>
> They were working towards adopting her and making her a legal member of their family. He made a choice in an effort to bring this child into his home, and then turned around and completely violated her. Your Honor, I think that that is quite possibly the most egregious part of this entire case, is that position of trust and supervision."

¶ 11        Defense counsel discussed defendant's lack of a criminal record. Additionally, counsel emphasized defendant's history as a victim of sexual abuse as a child, mental health diagnoses, and good character, demonstrated through the character letters. In reviewing the psychosexual evaluation, counsel noted the recommendations called for sex-offender-specific treatment, but it did not recommend a lengthy prison sentence. Counsel pointed to defendant's

decision to plead guilty so the victim would not have to go through a trial and requested a 12-year sentence, with continued counseling and monitoring.

¶ 12    Defendant also made a statement in allocution. Defendant apologized "for putting everybody through everything" and wished Bianca well. Defendant continued:

> "I don't know what happened with me. I seemed fine when—when we moved back to here initially, but something in my mind—I don't know what happened. Something changed. And I don't know why I—I can't process. I can't put into words *** why I did what I did. And I'm just—I'm truly sorry."

¶ 13    The trial court began its ruling by stating it considered the factual basis; the PSI; defendant's history, character, and attitude; the arguments of the parties; defendant's statement in allocution; the "relevant statutory factors in aggravation; [and] the relevant statutory factors and some of the nonstatutory factors in mitigation." The court stated, "If I mention any of them specifically, I'm not saying those are the only ones I'm considering, but are ones that I might be highlighting."

¶ 14    In aggravation, after considering the effects adverse child experiences can have on the victim in the short and long term, the trial court found defendant did cause serious harm. The court found a sentence was necessary to deter others and to not deprecate the seriousness of defendant's conduct. The court also considered defendant's position of trust, stating:

> "I already had this kind of highlighted in my notes here before we even started. That one of the factors in aggravation is whether or not you were in a position of trust over the victim. You were the foster parent of this *** 11-year-old girl. That means that she wasn't put in a position where she got to decide. It was a circumstance of the courts and the State entrusted you. Not just with making sure—

you were entrusted with taking care of this girl, being responsible for this girl, and you did the opposite. You didn't protect her from harm, you caused the harm. I do find that particularly egregious in this circumstance. And a lot of times I say this, that I'm not giving *** substantial weight, or massive weight to one factor or another. But in this case I do. That was a big factor. It's not just a matter of one person trusting you. It is our society, our juvenile system that entrusted you with this, and you victimized her."

¶ 15 In mitigation, the trial court considered defendant's lack of criminal history and admission of guilt. The court stated, "As much as I said the State's recommendation is not out of line, I think I also do need to take into consideration someone taking accountability for their action, the fact that you admitted to one of the allegations."

¶ 16 The trial court sentenced defendant to 45 years in DOC.

¶ 17 Thereafter, defendant filed a motion to reconsider his sentence, arguing the sentence was excessive and did not adequately consider his history, character, and rehabilitative potential. After a hearing, during which defendant was represented by new counsel, the trial court denied the motion.

¶ 18 This appeal followed.

¶ 19          II. ANALYSIS

¶ 20 On appeal, defendant argues his sentence is excessive and disproportionate to the seriousness of the offense. Specifically, defendant contends the trial court failed to give proper weight to his tumultuous childhood, his history of mental illness, and his rehabilitative potential.

¶ 21 A trial court's sentence must be based on "the particular circumstances of the case, including (1) the defendant's history, character, and rehabilitative potential; (2) the seriousness of

the offense; (3) the need to protect society; and (4) the need for punishment and deterrence." *People v. Sturgeon*, 2019 IL App (4th) 170035, ¶ 102. Additionally, the Unified Code of Corrections (730 ILCS 5/1-1-1 *et seq.* (West 2022)) sets forth the mitigating and aggravating factors the court must consider when determining an appropriate sentence. See *Sturgeon*, 2019 IL App (4th) 170035, ¶ 105. However, "[t]he weight to be given to any proper factor *** is left to the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion." (Emphasis omitted.) *Id.* ¶ 104. "A trial court's sentence is an abuse of discretion only if it is greatly at odds with the spirit and purpose of the law or is manifestly disproportionate to the nature of the offense." *People v. Klein*, 2022 IL App (4th) 200599, ¶ 38. Moreover, "[a] sentence imposed within the statutory range provided by the legislature is presumed to be proper." *Sturgeon*, 2019 IL App (4th) 170035, ¶ 104. "In considering the propriety of a sentence, the reviewing court must proceed with great caution and must not substitute its judgment for that of the trial court merely because it would have weighed the factors differently." *People v. Fern*, 189 Ill. 2d 48, 53 (1999).

¶ 22        Based on his open plea to predatory criminal sexual assault of a child, defendant was subject to a sentencing range of 6 to 60 years' imprisonment. 720 ILCS 5/11-1.40(b)(1) (West 2020). The trial court fashioned a sentence of 45 years, well within the statutory range.

¶ 23        Defendant argues the trial court failed to give proper weight to several mitigating factors, leading to an excessive sentence. First, defendant points to his tumultuous childhood, including his own history as a victim of childhood sexual abuse. Second, defendant contends his history of mental illness was mitigating. Finally, defendant maintains the court gave "nary a nod" to his rehabilitative potential, including his amenability to counseling and treatment, his lack of criminal history, and the unlikelihood he would commit another offense.

¶ 24        "[I]t is presumed a trial court considered all relevant mitigating and aggravating factors in fashioning a sentence, and that presumption will not be overcome absent explicit evidence from the record that the trial court failed to consider mitigating factors." *People v. Halerewicz*, 2013 IL App (4th) 120388, ¶ 43. "A defendant's rehabilitative potential and other mitigating factors are not entitled to greater weight than the seriousness of the offense." *People v. Pippen*, 324 Ill. App. 3d 649, 652 (2001). Further, the trial court is not required to reduce a sentence from the maximum allowed due to the existence of mitigating factors. *Id.*

¶ 25        Here, all the mitigating factors defendant points to were presented to the trial court. Nothing in the record affirmatively demonstrates the court failed to consider any of the mitigating factors present. Indeed, the court's remarks clearly indicate it considered the statutory and nonstatutory mitigating factors and the arguments of counsel. It further explicitly stated it would not discuss all the factors it was considering in detail. See *People v. Harris*, 2015 IL App (4th) 140696, ¶ 57 ("A court is not required to expressly outline every factor it considers for sentencing."). Moreover, the court expressed it was sentencing defendant below the State's requested 60-year sentence because of the mitigating factors present. By arguing the court "failed to give proper weight" to the mitigating factors, defendant is essentially asking this court to rebalance the mitigating and aggravating factors and substitute our judgment for the judgment of the trial court, which we cannot and will not do. See *People v. Alexander*, 239 Ill. 2d 205, 214-15 (2010).

¶ 26        Further, specifically as to defendant's rehabilitative potential, it was reasonable for the trial court to conclude the evidence of defendant's rehabilitative potential was not as robust as he frames it on appeal. Defendant argues he is at a low risk to reoffend, pointing to the psychosexual evaluation. However, the evaluation placed him at an "Average Risk (Level III)" to

reoffend. An average risk is, by its very definition, not a low risk. The evaluation also recommended extensive restrictions, in addition to a sex offender specific treatment program. Defendant also argues he was remorseful and amenable to counseling, which showed his rehabilitative potential. But during defendant's statement in allocution, he stated after his apology he did not "know what happened with him" and could not "process" or "put into words" why he did what he did. Defendant never mentioned he wanted to seek counseling. Defense counsel argued extensively defendant *should* receive treatment, but he also never stated defendant was particularly open to counseling or even desired it. Nothing in the arguments of counsel or defendant's statement demonstrated defendant was especially amenable to counseling. The evidence of defendant's rehabilitative potential was not as overwhelming as he suggests to this court.

¶ 27        When sentencing defendant, it was within the trial court's discretion to weigh the seriousness of his conduct over the mitigating factors. See *Pippen*, 324 Ill. App. 3d at 652 ("A defendant's rehabilitative potential and other mitigating factors are not entitled to greater weight than the seriousness of the offense."). The court found defendant's position of trust was the most significant aggravating factor. The court had entrusted L.A., a vulnerable child removed from her biological parents, to defendant's care, and defendant breached that trust. Defendant minimizes the physical act charged as "a single instance of touching" and "among the less serious conduct that can fall within the definition of the offense." However, it was not merely the physical contact which made defendant's offense particularly egregious. It was the specific, special relationship between a foster child and a foster parent breached by defendant's conduct which made the seriousness of the offense particularly appalling. Defendant's attempt to compare his offense to other unrelated offenses is unavailing. The trial court did not abuse its discretion in sentencing defendant to 45 years' imprisonment.

¶ 28    As a final argument, defendant suggests his sentence is excessive because it is a *de facto* life sentence. Defendant forfeits this argument on appeal, however, by failing to properly develop it with authorities. A reviewing court "is entitled to have issues clearly defined with pertinent authority cited and coherent arguments presented; any arguments inadequately presented are forfeited." *People v. Hui*, 2022 IL App (2d) 190846, ¶ 52. Here, defendant cites only one Illinois case, which pertains only to the life expectancy of persons held in general population. See *People v. Sanders*, 2016 IL App (1st) 121732-B, ¶ 26. Defendant otherwise cites inapposite federal case law. Defendant does not cite any Illinois case which implies a trial court should not sentence a criminal defendant to a term within the statutory range simply because the defendant may not outlive his sentence. See *People v. Towns*, 2020 IL App (1st) 171145, ¶ 46 ("[S]o long as a defendant's lengthy prison sentence is not otherwise an abuse of discretion, it will not be found improper merely because it arguably amounts to a *de facto* life sentence.").

¶ 29                                III. CONCLUSION

¶ 30    For the reasons stated, we affirm the trial court's judgment.

¶ 31    Affirmed.