*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

KUMARA K. HUBBERT,

Defendant-Appellant.

UNPUBLISHED
December 04, 2025
9:31 AM

No. 369097
Wayne Circuit Court
LC No. 98-013443-02-FC

Before: K. F. KELLY, P.J., and BORRELLO and CAMERON, JJ.

CAMERON, J. (*concurring in part and dissenting in part*).

The majority vacates defendant's 40- to 60-year sentence for second-degree murder for constitutional and non-constitutional reasons. Underlying the majority's holdings is the conclusion that the sentence imposed here is equivalent to an impermissible life sentence for a juvenile offender. The majority reaches this conclusion by relying on two cases, *People v Wines*, 323 Mich App 343; 916 NW2d 855 (2018), rev'd on other grounds 506 Mich 954, and *People v Eads*, ___ Mich App ___; ___ NW3d ___ (2025) (Docket No. 357332), for the bright-line rule that a sentence of 39.3 years or more is an impermissible life sentence for a juvenile. In my view, the majority's reliance on these cases is problematic. As I will explain, the authority on which *Wines* and *Eads* rely does not support the conclusion that a 39.3-year sentence is categorically a life sentence for every offender, regardless of age. Thus, I write separately to highlight several legal issues that I believe contributed to the *Eads* opinion and to explain why I believe the majority is reading *Eads* far too broadly. That said, I recognize that this Court is bound by *Eads*, MCR .7215(C)(2), and I agree that resentencing is necessary. I, therefore, dissent in part, and concur in part.

## I. JUVENILE SENTENCING LAW LEADING UP TO *EADS*

In *Miller v Alabama*, 567 US 460, 465, 470, 479; 132 S Ct 2455; 183 L Ed 2d 407 (2012), the United States Supreme Court held that a mandatory life-without-parole sentence for a juvenile convicted of a homicide offense constitutes a cruel and unusual punishment prohibited by the Eighth Amendment. The ruling requires trial courts to consider several factors, commonly known as the *Miller* factors, before sentencing a juvenile to life without parole. See *Id*. at 471-472. "A

judge or a jury must have the opportunity to consider [these] mitigating circumstances before imposing the harshest possible penalty for juveniles." *Id*. at 489.

In response to *Miller*, our Legislature adopted MCL 769.25 and 769.25a, which provide the statutory and procedural requirements for sentencing, or resentencing, an offender younger than 18 convicted of first-degree murder. These statutes require that, if the prosecution seeks the harshest possible penalty of life without the possibility of parole, the sentencing judge must hold a hearing, and "shall consider the factors listed in *Miller*." Unless the prosecution moves to seek a life sentence, the sentencing court must impose a sentence with a minimum of 25 years, and no more than 40 years, and a maximum of no more than 60 years. The Legislature did not require application of the *Miller* factors when fashioning term-of-years sentences.

Michigan courts began to give *Miller* broader application starting with *Wines*. In *Wines*, this Court held that sentencing courts must apply the *Miller* factors when imposing term-of-years sentences for first-degree murder, despite the fact that neither the United States Constitution nor our Legislature require it. The defendant in *Wines* was a juvenile who was sentenced to life without parole. *Id*. at 347. After *Miller*, he was entitled to resentencing. *Id*. Because the prosecution did not seek to uphold the defendant's life sentence, there was no *Miller* hearing, and the sentencing court resentenced the defendant to a term of 40 to 60 years, relying on well-established sentencing considerations. *Id*. On appeal, the defendant argued that the "the *Miller* standards should govern his sentencing even when the prosecution does not seek a life-without-parole sentence[.]" *Id*. at 349. The *Wines* Court rejected the defendant's constitutional argument, but vacated the defendant's sentence, holding:

> [T]here is no *constitutional* mandate requiring the trial court to specifically make findings as to the [*Miller*] factors except in the context of a decision whether to impose a sentence of life without parole. We further conclude that when sentencing a minor convicted of first-degree murder, when the sentence of life imprisonment without parole is not at issue, the court should be guided by a balancing of the *Snow* objectives[1] and in that context is required to take into account the attributes of youth such as those described in *Miller*. [*Id*. at 352.]

*Wines*'s rationale for extending the *Miller* factors to term-of-years sentences to first-degree murder was based on its concern about the potential severity of the sentence that could be imposed under these statues. Specifically, the *Wines* Court was troubled that these statutes lacked guidelines to guide judicial discretion, and the "very substantial" range of permissible term-of-years sentences could result in a juvenile being incarcerated until "he or she is a geriatric[.]" *Id*. at 350-351. It also expressed concern with the possibility of a lengthy sentence because "inmate life expectancy is statistically low[.]" *Id*. at 350.[2] As a result, *Wines* held that "a failure to consider the distinctive attributes of youth, such as those discussed in *Miller*, when sentencing a minor to a

---

[1] The *Snow* objectives are: "(1) reformation of the offender, (2) protection of society, (3) punishment of the offender, and (4) deterrence of others from committing like offenses." *Wines*, 323 Mich App at 351.

[2] *Wines*'s questionable support for this statement will be addressed below.

term of years pursuant to MCL 769.25a so undermine[d] a sentencing judge's exercise of his or her discretion [that it] constitute[d] reversible error." *Id*. at 352.

By its terms, *Wines*'s holding is firmly anchored in term-of-years sentences for first-degree murder under the sentencing scheme set forth in MCL 769.25 and MCL 769.25a. *Wines*, 323 Mich App at 352 (requiring consideration of youth when balancing the *Snow* objectives "*when sentencing a minor convicted of first-degree murder, when the sentence of life imprisonment without parole is not at issue*[.]") (Emphasis added). Nevertheless, this Court has occasionally cut *Wines* from its jurisprudential moorings and misapplied it well beyond its roots in first-degree murder. One particularly relevant example of this Court's misapplication of *Wines* is when it vacated Hubert Marshall's—defendant's codefendant—term-of-years sentence for *second-degree murder* involving the very same crime that underlies this appeal. *People v Marshall*, unpublished per curiam opinion of the Court of Appeals, issued October 22, 2020 (Docket No. 345927).

In *Marshall*, the panel, while expressing no concerns about the sentence term actually imposed, vacated Marshall's second-degree murder conviction because the sentencing court failed to consider the *Snow* factors in light of his "distinctive attributes of . . . youth" that *Wines* had incorporated from *Miller*. *Id*. at 8. The *Marshall* panel failed to explain why *Wines*'s holding, which was limited to term-of-years sentences for *first-degree murder* convictions, should be extended to a different criminal offense—*second-degree murder*—that is subject to a different sentencing scheme, and to which the sentencing guidelines applied.[3]

Since *Wines*, the Michigan Supreme Court has clarified some of the circumstances under which "youth" must be considered at sentencing for certain youthful offenders in various contexts. The most relevant of these decisions to this case is *People v Stovall*, 510 Mich 301; 987 NW2d 85 (2022). In *Stovall*, the defendant was sentenced to life with the possibility of parole for second-degree murder, and argued that his sentence was cruel and/or unusual because he was "effectively being denied a meaningful opportunity for release." *Id*. at 308-309. Our Supreme Court held that the defendant's sentence was cruel or unusual under the Michigan Constitution, because (1) juveniles convicted of second-degree murder were not entitled to the same procedural safeguards as those convicted of first-degree murder, and (2) permitting a juvenile convicted of the less serious offense (second-degree murder) to serve a sentence deemed impermissible for juveniles convicted of the more serious offense (first-degree murder) was cruel or unusual. *Id*. at 315-317.

## II. *EADS*

This background leads us to *Eads*, the case on which the majority relies to vacate defendant's sentence. The defendant in *Eads* was a juvenile offender sentenced to 50 to 75 years' imprisonment for second-degree murder. *Eads*, ___ Mich App at ___; slip op at 1. He moved for relief from judgment after *Miller*, which the trial court denied. *Id*. On appeal, this Court held that

---

[3] By contrast, both before and after *Marshall*, this Court has also upheld juvenile term-of-years sentences for second-degree murder convictions without even mentioning *Wines*, presumably in recognition that it was inapplicable. See, e.g., *People v Schwander*, unpublished opinion of the Court of Appeals, issued October 6, 2022 (Docket No. 354073); *People v Brown*, unpublished per curiam opinion of the Court of Appeals, issued August 13, 2019 (Docket No. 344537).

his sentence of 50 to 75 years violated the Michigan Constitution's ban on cruel or unusual punishment because the lengthy term was "effectively . . . a life sentence[,]" which was struck down by our Supreme Court in *Stovall*. *Id*. *Eads* also held that the sentence "lack[ed] the requisite proportionally[]" under *People v Milbourn*, 435 Mich 630; 461 NW2d 1 (1990), for this same reason, and because the trial court failed to consider the *Miller* factors. Underlying both holdings was *Eads*'s conclusion that the lengthy sentence imposed "would require him to outlive his life expectancy before even becoming eligible for parole and would deny him a meaningful opportunity to obtain release . . . ." *Eads*, ___ Mich App at ___; slip op at 14-15.

Relevant to this appeal, *Eads's* constitutional and proportionality analyses relied on a United States Sentencing Commission (USSC) report that "defined a life sentence as a period of incarceration of 470 months (approximately 39 years) or more[.]" *Id*. at ___; slip op at 9. *Eads* reasoned that the defendant's sentence was an impermissible, de facto life sentence because the USSC "defines a life sentence as a period of incarceration of 470 months (approximately 39 years) or more—a period of incarceration well short of *Eads's* 50-year minimum [sentence]." *Id*. Applying this definition, the majority in *Eads* reasoned that the defendant, "despite his juvenile status and all that has now been recognized to come with it," nonetheless "received a sentence for second-degree murder that would require him to outlive his life expectancy before even becoming eligible for parole and would deny him a meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation." *Id*. at ___; slip op at 14-15. *Eads* supported this finding by quoting *Wines*'s claim that "a 2012 data report from the USSC 'indicate[d] that a person held in a general prison population has a life expectancy of about 64 years,' although, as this Court has previously acknowledged, 'this estimate probably overstates the average life expectancy for minors committed to prison for lengthy terms.' " *Id*., quoting *Wines*, 323 Mich App at 351 n 6.

I believe that there are several problems with *Eads's* reliance on this USSC report. First, there is no support in the report that the average life expectancy for federal prisoners is 64-years. This unsubstantiated claim appears to have first been made by an Illinois appellate court that opined: "The United States Sentencing Commission Preliminary Quarterly Data Report (through June 30, 2012) indicates that a person held in a general prison population has a life expectancy of about 64 years. This estimate probably overstates the average life expectancy for minors committed to prison for lengthy terms." *People v Sanders*, 2016 IL App (1st) 121732-b, ¶ 26; 56 NE3d 563 (2016). *Wines*, 323 Mich App at 351 n 6, cited and repeated these claims verbatim, even though they are not in the 2012 report, nor do they seem to appear in any report published by the USSC.

The USSC report *Wines* cites uses the phrase "average life expectancy" only in the context of explaining that, for statistical reasons, federal life sentences were given a numeric value of 470 months, "a length consistent with the *average life expectancy* of federal criminal offenders *given the average age of federal offenders*."[4] The phrase by the USSC links an unidentified average life

---

[4] United States Sentencing Commission, *Final Quarterly Data Report Fiscal Year 2012*, Appendix A, p 7, available at <https://www.ussc.gov/sites/default/files/pdf/research-and-

expectancy to the then-average age of federal offenders. While this particular report did not indicate the average age of federal offenders, according to the USSC, the average age of federal prisoners as of January 28, 2023, is 41 years old.[5] Given this statistic, I am not at all surprised that the USSC considers 470-month sentences as having a length consistent with the average life expectancy of federal criminal offenders in general. It goes without saying that the analysis is very different for a 17-year-old juvenile offender.

In my opinion, *Eads* erroneously relied on this same language to support its reasoning. Specifically quoting *Wines*, 323 Mich App at 351 n 6, *Eads* asserted that "a 2012 data report from the USSC 'indicates that a person held in a general prison population has a life expectancy of about 64 years,' although, as this Court has previously acknowledged, 'this estimate probably overstates the average life expectancy for minors committed to prison for lengthy terms.' " *Eads*, ___ Mich App at ___; slip op at 9 (brackets omitted). *Eads* used this unsubstantiated premise to conclude that the defendant in that case was being required to "serve a term of years requiring him to surpass his life expectancy before he may become even *eligible* for parole for the first time[,]" because he would be almost 65 years old on the estimated date of his first parole eligibility, which was "beyond even the average life expectancy of an individual who enter[ed] prison as an adult and [was] thereafter held in a general prison population." *Eads*, ___ Mich App at ___; slip op at 9-10, 10 n 15, citing *Wines*, 323 Mich App at 351 n 6.

Moreover, *Eads* did not recognize the limitations of the USSC's life-sentence definition when erroneously applying it to the defendant's sentencing. *Eads* repeatedly referred to, and used, this definition to support its conclusion that the defendant's sentence was an impermissible, de facto life sentence because the USSC's de facto 470-month-or-more life sentence figure was "well short of Eads's 50-year minimum . . . ." *Eads*, ___ Mich App at ___; slip op at 9.

It is certainly true that the USSC defines a de facto life sentence as "a period of incarceration of 470 months (39.3 years) or more." But the 470-month figure is a statistical proxy used to represent de facto life sentences in the federal system.[6] Statistical proxies are defined as "variable[s] used instead of the variable of interest when that variable of interest cannot be measured directly."[7] Researchers at the USSC use the figure as a benchmark to interpret

publications/federal-sentencing-statistics/quarterly-sentencing-updates/USSC_2012_Quarter_Report_Final.pdf> (emphasis added).

[5] United States Sentencing Commission, *Quick Facts: Federal Offenders in Prison*, p 1, p 2 n 1, available at <https://www.ussc.gov/sites/default/files/pdf/research-and-publications/quick-facts/BOP_January2023.pdf>.

[6] United States Sentencing Commission, *Life Sentences in the Federal System*, February 2015, p 10, available at <https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-projects-and-surveys/miscellaneous/20150226_Life_Sentences.pdf>.

[7] Oxford Reference, *Proxy Variable*, <https://www.oxfordreference.com/display/10.1093/oi/authority.20110803100351624> (accessed December 4, 2025). See also, *Scott & White Health Plan v Becerra*, 693 F Supp 3d 1,

sentencing data from across the federal judicial system. Importantly, this 470-months-or-more benchmark does not adjust for the age of a particular offender. It is a one-size-fits-all tool that does not differentiate between a 41-year-old offender[8] and a 17-year-old offender who are both sentenced to 470 months' imprisonment even though the offenders' respective ages and remaining life expectancies at the time of sentencing are radically different. In my view, a definition used by a federal policy-making agency provides poor guidance for how Michigan courts should construe the Michigan Constitution and its related caselaw. This is especially true when the definition is, in my view, misapplied to characterize a "life sentence" for a 17 year-old.

Setting these concerns aside, I respectfully dissent from the majority's conclusion in this case that *Eads* renders defendant's sentence invalid. Here, we are considering a sentence of 40 to 60 years' imprisonment for second-degree murder. This sentencing term is far less severe than the 50-to-75 years that *Eads* determined was invalid. I believe that the 10- and 15-year differential between the two sentences is "substantial,"[9] while the majority characterizes defendant's sentence as merely "slightly less" than the lengthy term vacated in *Eads*.

I am also not persuaded that a 40- to 60-year term of imprisonment, alone, leads to the inescapable conclusion that defendant's sentence is, as the majority contends, "still lengthy enough to effectively be a life sentence." The majority makes this finding by reading *Eads* as dictating a numerical, bright-line rule that trial courts must mechanically apply to juvenile sentencing. But if this is true, then *Eads* stands for the dubious proposition that sentencing courts violate the Michigan Constitution's prohibition against cruel or unusual punishment and *Milbourn*'s proportionalty test when they sentence a juvenile convicted of second-degree murder to a minimum sentence that is 39.3 years or more, the USSC's benchmark for life sentences. Moreover, if the majority is correct that a minimum sentence of 39.3 years or more is equivalent to a life sentence that violates Michigan's ban on cruel or unusual punishment, then trial courts may very

---

13 (D DC, 2023) (noting that a statistical proxy "by nature, will never achieve an exactly precise measurement.").

[8] Further undermining the sweeping application of this benchmark to juveniles, the average age of this group of offenders reported by the USSC has only gone up in recent years. A 2015 report estimated the average age to be 37, while a 2022 report estimated that the average age had increased to 39, and, as noted, the average age as of January 28, 2023 was 41. United States Sentencing Commission, *Life Sentences in the Federal System*, February 2015, p 11, available at <https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-projects-and-surveys/miscellaneous/20150226_Life_Sentences.pdf>; United States Sentencing Commission, *Life Sentences in the Federal System*, July 2022, p 11, available at <https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2022/20220726_Life.pdf>; United States Sentencing Commission, *Quick Facts: Federal Offenders in Prison*, p 1, p 2 n 1, available at <https://www.ussc.gov/sites/default/files/pdf/research-and-publications/quick-facts/BOP_January2023.pdf>.

[9] Notably, the "very substantial" range of potential minimums that caused the *Wines* panel such concern was 15 years. *Wines*, 323 Mich App at 350.

well be required to resentence all the juvenile offenders currently serving a term of years sentence with a minimum set at 39.3 years or more.

I read *Eads*'s holdings to be narrower. *Eads* held that a 50-year minimum sentence for a defendant convicted of second-degree murder as a juvenile is "cruel or unusual" punishment because it is the constitutional equivalent to the parolable life sentence that our Supreme Court struck down in *Stovall*. The *Eads* Court also held that the defendant's sentence was disproportionate because the sentencing court failed to consider the defendant's youth as a mitigating factor. In my opinion, the fact that *Eads* cited favorably to the USSC definition for de facto life sentences in its reasoning does not make this federal statistical benchmark a permanent feature of Michigan's juvenile sentencing laws. I further believe that applying the majority's rigid, constitutionally-based 39.3-year cutoff is inconsistent with Michigan's proportionality jurisprudence, which requires individualized consideration of the circumstances of the offense and the offender as recognized in *Eads* and *Milbourn*. *People v Steanhouse*, 500 Mich 453, 474; 902 NW2d 327 (2017).

But I also acknowledge that *Eads*, as binding precedent, requires us to remand for resentencing in this case. While I do not believe *Eads* mandates the conclusion based on the actual sentence, one of *Eads*'s holdings is that considerations of youth and its attendant characteristics (which I interpret to be the *Miller* factors) must be considered by a sentencing court in its proportionality analysis when sentencing a juvenile defendant for second-degree murder to a term of years. *Eads*, ___ Mich App at ___; slip op at 14-15. Accordingly, because defendant's youth was not considered when he was initially sentenced, his sentence cannot be said to be proportional, and he is entitled to resentencing.

That said, I remain uncertain about the scope of *Eads*'s proportionality holding. Does a sentencing court err when it fails to consider youth only when the minimum sentence is in excess of 39.3 months? Or must youth be considered by sentencing courts for all juvenile second-degree murder sentences, regardless of term length? To that end, is *Eads*'s proportionally holding limited to juveniles convicted of second-degree murder, or must it be more broadly applied to other offenses? In my opinion, these questions will remain unresolved until our Supreme Court addresses them. I remain hopeful that it will do so considering it has recently granted leave in *Eads*.

/s/ Thomas C. Cameron

-7-