2026 IL App (2d) 250214-U
No. 2-25-0214
Order filed May 13, 2026

**NOTICE:** This order was filed under Illinois Supreme Court Rule 23(b) and is not precedential except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee,

v.

SOCORRO LOPEZ, Defendant-Appellant.

Appeal from the Circuit Court of Kane County.
Honorable Alice C. Tracy, Judge, Presiding.
No. 21-CF-1749

JUSTICE SCHOSTOK delivered the judgment of the court.
Presiding Justice Kennedy and Justice Jorgensen concurred in the judgment.

**ORDER**

¶ 1    *Held*:  At sentencing on defendant's conviction for trafficking nearly 900 grams of methamphetamine, the trial court did not abuse its discretion in imposing a prison sentence of 29 years in prison where the sentencing range was 24 to 100 years in prison and the court considered all factors in mitigation and aggravation while emphasizing the seriousness of the offense and defendant's poor prospects for rehabilitation given his criminal history and prior uncharged methamphetamine deliveries.

¶ 2    Following a bench trial, defendant, Socorro Lopez, was convicted of methamphetamine trafficking (400 grams or more but less than 900 grams) (720 ILCS 646/56(a), (b) (West 2020); 720 ILCS 646/55(a)(2)(E) (West 2020)) and sentenced to 29 years in prison. Defendant appeals, arguing that his sentence is excessive because it amounts to a *de facto* life sentence that fails to

account for his age, health, and potential for rehabilitation. Because the trial court did not abuse its discretion in sentencing defendant, we affirm.

¶ 3 I. BACKGROUND

¶ 4 Defendant was initially charged by indictment with three counts related to possession of methamphetamine: methamphetamine trafficking (900 grams or more) (720 ILCS 646/56(a), (b) (West 2020); 720 ILCS 646/55(a)(2)(F) (West 2020)) (count I), unlawful possession of methamphetamine with intent to deliver (900 grams or more) (720 ILCS 646/55(a)(1), (a)(2)(F) (West 2020)) (count II), and unlawful possession of methamphetamine (900 grams or more) (*id.* § 60(a), (b)(6)) (count III). The indictment stated that the offenses occurred on or about September 28, 2021. Defendant was born on July 1, 1972, and was 49 years old at the time of the alleged offenses.

¶ 5 During pretrial proceedings, the trial court granted the State's motion *in limine* to admit evidence of defendant's prior bad act for the purpose of showing defendant's knowledge. See Ill. R. Evid. 404(b) (eff. Jan. 1, 2011). The State planned to introduce evidence that, on August 12, 2021, a package with characteristics similar to the package of methamphetamine involved in this case was received by defendant at an address in Aurora.

¶ 6 Also, before trial, the State amended counts I, II, and III to allege that defendant possessed 400 grams or more but less than 900 grams of methamphetamine. See 720 ILCS 646/56(a), (b) (West 2020); 720 ILCS 646/55(a)(1), (a)(2)(E) (West 2020); 720 ILCS 646/60(a), (b)(6) (West 2020).

¶ 7 During the bench trial, Gilberto Ramirez Figueroa testified that, in September 2021, he worked for a roofing company defendant owned. Defendant offered to pay Figueroa to receive a package of methamphetamine at a mobile home on Rural Street in Aurora where Figueroa had

resided until his former partner obtained an order of protection barring him from the home. Figueroa agreed. On September 28, 2021, after the postal service delivered the package, Figueroa and defendant drove to the home. Figueroa took the package from the porch, but he and defendant were soon arrested, as law enforcement had previously intercepted the package (which was sent from Los Angeles) and were tracking it. The State introduced cell phone messages in which defendant arranged for the shipping of the package. The parties stipulated that the package held a substance that contained methamphetamine and weighed 889.7 grams. A police sergeant opined that the drugs originated from a "cartel-infested" area in Sinaloa, Mexico. Per its motion *in limine*, the State presented evidence linking defendant to a package delivered to a home on Beach Street in Aurora on August 12, 2021. The sergeant testified that the Beach Street package likely contained methamphetamine because its contents were wrapped similarly to those of the package delivered to Rural Street.

¶ 8     Defendant was convicted of count I: methamphetamine trafficking (400 grams or more but less than 900 grams) (720 ILCS 646/56(a), (b) (West 2020); 720 ILCS 646/55(a)(2)(E) (West 2020)). Count II (unlawful possession of methamphetamine with intent to deliver) and count III (unlawful possession of methamphetamine) merged with the trafficking charge as lesser included offenses. Defendant subsequently filed a motion for a new trial, which was denied.

¶ 9     Defendant's presentence investigation report (PSI) listed his criminal history, which included five convictions of driving under the influence of alcohol (DUI), two domestic battery charges,[1] a conviction of unlawful possession of a controlled substance (a Class 4 felony), two

---

[1]The State later clarified that defendant had not been convicted in one of those domestic battery cases, and the court stated that it would not consider the case. In the other domestic battery case, the charge was reduced to simple battery.

convictions of driving with a suspended license, and an open immigration case. Of defendant's prior convictions, the PSI stated, "It appears [defendant] has been sentenced to probation for three cases, two [of] which were concurrent, and an additional case that was ordered while he was already on probation. All of these cases terminated unsatisfactorily, the last one being [terminated] unsatisfactorily on 11/12/20."

¶ 10    The PSI included a section on defendant's physical health, which stated:

> "[Defendant] reported that he underwent brain surgery in 2014 after a fall at work caused him to have bleeding on his brain. He said that while he was in surgery he suffered a stroke, which left him unable to move half of his body for a while. He said that he has also suffered epileptic seizures since that time, for which he takes medication daily. ***."

Defendant's medical records were later submitted to the court.

¶ 11    According to the PSI, defendant reported that he first began regularly using alcohol at age 14, and once he came to the United States at age 16, he began drinking 12 to 15 beers daily. After completing court-ordered DUI counseling for the third time in 2012, defendant "mostly stopped drinking." However, he continued to drink occasionally in social situations. Defendant reported that he began using marijuana at age 17 and continued using it regularly until his current detainment, which began in 2021. Defendant denied any other drug use.

¶ 12    Defendant denied receiving any disciplinary actions during his time in the Kane County jail. He said that he participated for over a year in Lighthouse Recovery, a substance abuse treatment program. He also obtained a forklift certification and worked in the kitchen. The PSI reported that he was at a medium risk of engaging in future criminal conduct.

¶ 13    Defendant denied committing the offense at issue and claimed that he had been "trap[ped]" by an employee.

¶ 14    At the sentencing hearing, the State introduced two police reports into evidence. The first described defendant's DUI offense from November 3, 2009. Defendant was stopped for a nonfunctioning light. Defendant appeared intoxicated, failed all field sobriety tests, and submitted to a breathalyzer test that showed a blood alcohol concentration of 0.185. Defendant also admitted to possessing the 0.36 grams of cocaine discovered during the pre-tow inventory.

¶ 15    The second police report detailed defendant's DUI offense from October 14, 2012. Defendant was stopped for improper lane usage. At the time of the stop, defendant provided a false name and incorrect date of birth. It was later discovered that defendant's driver's license was suspended at the time. When defendant exited the car to perform field sobriety tests, the arresting officer observed in plain view a white powdery substance in a clear plastic bag. The substance field tested positive for the presence of cocaine and weighed 0.9 grams.

¶ 16    The State argued that the only statutory factors in mitigation that "arguably" applied were subsections (a)(1) and (a)(2) of section 5-5-3.1 of the Unified Code of Corrections (Code) (730 ILCS 5/5-5-3.1(a)(1), (a)(2) (West 2022)): (a)1) defendant's criminal conduct neither caused nor threatened serious physical harm to another and (a)(2) defendant did not contemplate that his criminal conduct would cause or threaten serious physical harm to another. However, the State urged the trial court to "consider the potential harm of causing 900 grams of methamphetamine to be brought into the State of Illinois." The State argued that defendant had not been law-abiding prior to this offense, pointing to defendant's criminal history, as well as cell phone evidence showing that, in addition to the Rural Street package (which was the basis of the charges in this case) defendant arranged, in 2020 and 2021, the delivery of a total of three other packages that, given their similarities to the Rural Street package, likely contained methamphetamine as well. The State added that defendant refused to accept responsibility for the current offense.

¶ 17    The State argued that the statutory factors in aggravation included those under subsections (a)(1), (a)(3), and (a)(7) of the Code, respectively (*id.* § 5-5-3.2(a)(1), (a)(3), (a)(7) (West 2022)): (a)(1) defendant's conduct caused or threatened serious harm (based on the harm to the community if the trafficked drugs were distributed); (a)(3) defendant's history of prior criminal activity, which—according to the State—appeared to be increasing in severity over time; and (a)(7) the sentence was  necessary to deter others from committing the same crime.

¶ 18    The State proceeded with its sentencing recommendation, citing case law recognizing the societal dangers of drug trafficking.   Noting that defendant possessed 889.7 grams of methamphetamine, which was just shy of the maximum weight range for the charge (400 grams or more but less than 900 grams), the State argued that the minimum sentence of 24 years (the maximum was 100 years) (see 720 ILCS 646/56(b) (West 2020); 720 ILCS 646/55(a)(2)(E) (West 2020)) would be too lenient.  Instead, the State asked the trial court to sentence defendant to 39 years in prison, which would be "well below" the 62-year midpoint of the sentencing range.

¶ 19    Defense counsel argued that the 24-year minimum would be a sufficient sentence.  For statutory factors in mitigation, counsel agreed with the State's suggestion that the subsection (a)(1) and (a)(2) factors applied.  Referencing the potential influence of a Mexican drug cartel, counsel argued that subsection (a)(5) of the Code (730 ILCS 5/5-5-3.1(a)(5) (West 2022)) also applied because defendant's criminal conduct was induced or facilitated by someone other than the defendant.  Counsel stated, "Lastly, Your Honor, you have information that he had—has had brain surgery and had epileptic fits on this [*sic*] which would go to [subsection (a)(12) of the Code], endanger his medical condition."  See *id.* § 5-5-3.1(a)(12) ("The imprisonment of the defendant would endanger his or her medical condition.").  Counsel did not elaborate on that statement. Counsel further remarked that even the minimum sentence of 24 years would be "close to a life

sentence" because defendant, who was then age 52, would not leave prison before age 71. A 39-year sentence, counsel added, would be "essentially *** a death sentence."

¶ 20      Before pronouncing the sentence, the trial court stated that it had considered the following:

"All the evidence that was admitted at the trial as well as the trial testimony, all of the evidence that was admitted at the pretrial hearing on this case on the State's motion to admit proof of other crimes, all the evidence and testimony admitted at the sentencing hearing ***, the [PSI] and any addenda, the history, character and attitude of the defendant and the arguments of counsel, case law submitted and cited by the parties.

I have considered the statutory and non-statutory factors in aggravation and mitigation."

¶ 21      The trial court found that the statutory factors in aggravation under subsections (a)(1), (a)(3), and (a)(7) applied (*id.* § 5-5-3.2(a)(1), (a)(3), (a)(7) (West 2022)), as argued by the State. Specifically, the court noted defendant's criminal history and the evidence that he "was involved in receiving packages into the [S]tate of Illinois from California which possibly originated in Mexico other than the delivery—other than the package which was the subject of this case." As for factors in mitigation, the court said:

"I do find that the defendant has participated in the Lighthouse program, so he is trying to better himself in that regard.

I do not find that his character and attitudes indicate that he is unlikely to commit another crime. That's based on his criminal history and the seriousness of the level of methamphetamine he was involved in in this case."

¶ 22      The trial court also noted that, if the methamphetamine had weighed only about 11 grams more, defendant would have been facing a minimum prison sentence of 30 years. See 720 ILCS

646/56(b) (West 2020); 720 ILCS 646/55(a)(2)(F) (West 2020). The court then sentenced defendant to 29 years in prison, to be served at 75 percent.

¶ 23 Defendant filed a motion to reconsider sentence, arguing, among other things, that (1) the 29-year sentence was excessive in light of defendant's age and potential for rehabilitation; (2) the sentence was, given defendant's age, a "*de facto* life sentence" that violated the proportionate penalties clause of the Illinois Constitution (see Ill. Const. 1970, art. I, § 11 (stating that "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship[ ]")); (3) the court erred by giving too much consideration to aggravating factors and not enough consideration to mitigating factors; and (4) the court erred by failing to consider the cost of incarceration, specifically that it increases as prisoners become elderly and defendant would be an " 'elderly prisoner' " for the majority of his prison term (see 730 ILCS 5/5-4-1(a)(3) (West 2022) (in sentencing, the court shall "consider the financial impact of incarceration based on the financial impact statement filed with the clerk of the court by the Department of Corrections").

¶ 24 At the hearing on the motion to reconsider sentence, defense counsel reiterated the arguments presented in the motion. In response, the State argued that the trial court properly weighed the factors in aggravation and mitigation. Addressing defense counsel's comment that "[t]here is a probability or at least a chance that with this 29-year sentence my client could not live out his sentence," the State said, "That would apply to every defendant in every case sentenced to the Department of Corrections. *** Your Honor imposed a sentence that was in line with the statutory sentencing guidelines and only a few years over the mandatory minimum sentence." The State also remarked, "[T]he defense alleges that imprisonment would endanger the defendant's medical condition. There was no evidence presented to [Y]our Honor indicating that his physical

condition would be in danger by a prison sentence, whether because of age [or] seizures. That's entirely speculative by the defense."

¶ 25 Following arguments by the parties, the trial court noted that, at the sentencing hearing, "[t]here was very strong evidence presented that the defendant was involved in delivery and other packages of drugs being sent to him other than the one on which he was convicted." The court stated, "I'm going to rely on what I said at the original sentencing hearing. One of which factors I'm sure I considered was this was only 10.3 grams away from being a mandatory minimum [of 30 years]. I did carefully consider all of the aggravating and mitigating factors." The court explicitly stated that it would consider defendant's "physical issues" in ruling on the motion to reconsider sentence. In response to the argument that the 29-year sentence was a *de facto* life sentence, the court stated that, based on defendant's projected parole date, he could be released when he was 71 years old, and the court did not consider that to be a "death sentence." The court then denied the motion to reconsider. This timely appeal followed.

¶ 26                                  II. ANALYSIS

¶ 27 On appeal, defendant argues that the 29-year prison sentence is excessive because it is a "*de facto* life sentence" that fails to consider his age, medical issues, and rehabilitative potential, as well as the average life expectancy of prisoners. Defendant asks us to reduce the sentence to the statutory minimum of 24 years or remand the cause for resentencing. In response, the State argues that the trial court properly exercised its discretion in imposing a sentence at the low end of the sentencing range of 24 to 100 years. We agree with the State.

¶ 28 At the outset, we clarify the principles that govern defendant's sentencing claim. While defendant argues that the trial court abused its discretion by imposing on him, a 52-year-old, a prison sentence that he might not outlive, he also acknowledges that the term "*de facto* life

sentence" was developed in case law addressing special constitutional restrictions on the sentencing of juveniles and emerging adults (see, *e.g.*, *People v. Spencer*, 2025 IL 130015, ¶¶ 32, 34, 43), of which defendant is neither. Of course, although defendant does not enjoy such special constitutional protections, he may nonetheless challenge his sentence under the proportionate-penalties clause, which states that "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship[ ]" (Ill. Const. 1970, art. I, § 11). See *Spencer*, 2025 IL 130015, ¶ 43 ("A defendant may challenge a sentence of any length."). The following principles guide our review:

"A sentence within the statutory limits for the offense will not be disturbed unless the trial court has abused its discretion. [Citation.] An abuse of discretion occurs if the trial court imposes a sentence that 'is greatly at variance with the spirit and purpose of the law, or manifestly disproportionate to the nature of the offense.' [Citation.] It is well established that '[a] trial court has wide latitude in sentencing a defendant, so long as it neither ignores relevant mitigating factors nor considers improper factors in aggravation.' [Citation.] The existence of mitigating factors does not mandate imposition of the minimum sentence [citation] or preclude imposition of the maximum sentence [citation]. It is the trial court's responsibility 'to balance relevant factors and make a reasoned decision as to the appropriate punishment in each case.' [Citation.] The reviewing court is not to reweigh factors considered by the trial court." *People v. Flores*, 404 Ill. App. 3d 155, 157-58 (2010).

We presume that the trial court considered all relevant factors in determining the sentence, and that presumption will not be overcome without explicit evidence in the record that the court did not consider the applicable mitigating factors. *Id.* at 158. A defendant's sentence itself does not constitute explicit evidence that the trial court failed to consider mitigating evidence. *People v.*

*Brown*, 2017 IL App (1st) 142877, ¶ 64. The trial court must balance relevant factors, such as the nature of the crime, the defendant's rehabilitative potential, and the protection of the public. *People v. Jones*, 2014 IL App (1st) 120927, ¶ 55. The most important sentencing factor is the seriousness of the offense. *Id.* Notably, the trial court is not required to give more weight to a defendant's rehabilitative potential than to the seriousness of the offense. *People v. Branch*, 2018 IL App (1st) 150026, ¶ 39.

¶ 29 We consider first defendant's argument that the trial court did not adequately consider his likelihood of surviving the 29-year sentence given his age and "medical issues." Defendant relies on *People v. Sanders*, 2016 IL App (1st) 121732-B, ¶ 26, which cited a federal report and a scholarly article claiming that the average life expectancy in a prison's general population is 64 years and that prisoners suffer a 2-year decline in life expectancy for every year served in prison. However, the *Sanders* court was tasked with considering whether a juvenile defendant who had been sentenced to 100 years in prison had "shown a reasonable probability that he would have received a shorter sentence if the trial court correctly understood the eighth amendment as it applies *** to juvenile offenders." *Id.* ¶¶ 1, 28. We find *Sanders*, along with the other cases cited by defendant that deal with the sentencing of juvenile offenders, inapplicable here.

¶ 30 Also, defendant does not explain how imprisonment would endanger his "medical issues"; instead, he merely cites *Sanders*'s statement, drawn from a scholarly article, that " 'shoddy health care' " contributes to reduced life expectancy for prisoners. *Id.* ¶ 26 (quoting Nick Straley, *Miller's Promise: Re-Evaluating Extreme Criminal Sentences for Children*, 89 Wash. L. Rev. 963, 986 n.142 (2014)). Notably, the trial court expressly considered defendant's age and "physical issues" yet did not consider a 29-year term to be a "death sentence." Even if the court was incorrect in that assessment, the survivability of a prison sentence is not an overriding consideration. As long

as a defendant's sentence is not otherwise an abuse of discretion, it will not be found improper merely because it may arguably amount to a life sentence. See *People v. Towns*, 2020 IL App (1st) 171145, ¶ 46 (holding that 54-year-old defendant's 60-year sentence, which fell within the statutory range, was not an abuse of discretion); see also *People v. Steele*, 2025 IL App (4th) 241467-U, ¶ 79 (criminality "cannot be rewarded with a reduced sentence merely because [the] defendant chose to commit his crime at an advanced age").

¶ 31 Considering the remaining factors, we find no abuse of discretion. Defendant contends that the trial court failed to account for defendant's "substantial rehabilitative potential." Specifically, defendant points to the following facts from the PSI: (1) he arrived in the United States at age 16, having completed only seven years of formal education in Mexico; (2) despite this minimal education, he started his own roofing company, which operated for more than 20 years and employed two other workers; (3) he had no disciplinary issues while in jail; and (4) while in jail, he participated in the Lighthouse substance abuse treatment program, obtained a forklift certification, and worked in the kitchen.

¶ 32 In response, the State argues that the trial court's sentencing decision was supported by these facts: (1) defendant had engaged in methamphetamine trafficking multiple times; (2) the package for which he was convicted of trafficking contained nearly 900 grams of methamphetamine, with an approximate street value of $10,000; (3) his criminal history showed that he had been unsatisfactorily discharged from probation several times; and (4) given that his conviction required a sentence of 24 to 100 years in prison, his 29-year sentence was close to the minimum. The State asserts that, because the record does not rebut the presumption that the trial court considered all relevant factors—and because defendant cannot show that the sentence is greatly at variance with the spirit and purpose of the law or manifestly disproportionate to the

nature of the offense—defendant's argument "merely consists of an improper request for this [c]ourt to reweigh factors that the trial court already considered at the time of sentencing."

¶ 33   In reply, defendant asserts that, "[a]lthough the trial court stated that it considered the statutory sentencing factors, the length of the sentence, coupled with the court's apparent misunderstanding of the realities of life expectancy in prison, demonstrates an undue emphasis on deterrence and punishment."   As noted, the seriousness of the offense is the most important sentencing factor (*Jones*, 2014 IL App (1st) 120927, ¶ 55), and the length of the sentence alone does not show that the trial court did not consider all mitigating evidence (*Brown*, 2017 IL App (1st) 142877, ¶ 64).   We generally agree with defendant that "it is not a re-weighing of the factors to find that a sentence is at odds with the purpose and spirit of the law."   However, defendant fails to explain how his sentence might be at odds with the spirit and purpose of the law where the weight of methamphetamine he possessed was 11 grams below the *maximum* of the 500-gram weight range for the offense yet his sentence was only 5 years above the *minimum* of the range of 24 to 100 years.

¶ 34   While defendant argues that the trial court erred by failing to make rehabilitation an objective of his sentence, he essentially asks us to give more weight than the trial court did to his rehabilitative potential.   "This line of reasoning is a nonstarter, as we may not substitute our judgment as to the weight to be attributed to applicable factors."   *People v. Johnson*, 2025 IL App (4th) 241148-U, ¶ 29.   The court was within its discretion to weigh the factors as it did.   See *People v. Thurman*, 2024 IL App (4th) 230391-U, ¶ 81 ("A trial court has discretion to determine which of the four purposes of sentencing—retribution, deterrence, incapacitation, and rehabilitation— predominate in a given case.").   We therefore find no reason for disturbing the 29-year sentence.

¶ 35                                    III. CONCLUSION

¶ 36　For the reasons stated, we affirm the judgment of the circuit court of Kane County.

¶ 37　Affirmed.